[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
{¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12 and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
{¶ 2} The defendant-appellant, Fred Jordan, appeals from his conviction for one count of possession of cocaine and one count of trafficking in cocaine, violations of R.C. 2925.11(A) and R.C.2925.03(A)(2), respectively. In his six assignments of error, he challenges the weight and sufficiency of the evidence underlying his convictions, the trial court's decision to omit an instruction on the legal meaning of "possession," the trial court's giving of an instruction on "flight," and the prosecutor's remarks suggesting that his theory of defense relied upon a "cocaine fairy." For the reasons that follow, we affirm.
{¶ 3} According to the state's evidence, on April 25, 2001, Jordan was standing on a street corner in a location known for heavy drug trafficking, when police officers of the Criminal Apprehension Unit drove by and recognized him as a person wanted on an outstanding warrant. The warrant, as was later revealed at trial, was for drug trafficking. When the officers pulled over to arrest Jordan, he fled, tossing a small bag out of his pocket. The police captured Jordan and later recovered the bag, which was found to contain rock cocaine.
{¶ 4} In his first assignment of error, Jordan asserts that the trial court erred when it refused to grant a mistrial after one of the police officers revealed during cross-examination that Jordan's prior warrant pertained to drug trafficking. Although it is not reflected in the transcript, the state does not dispute that the first judge who presided over the case (who later became ill and was replaced) granted Jordan's motion in limine to preclude the state from introducing such evidence. The second judge, however, declined to grant a mistrial when the police officer testified concerning the nature of the warrant, because, in the judge's view, defense counsel had "precipitated the response." Defense counsel had been asking the police officer specifically about what had occurred on April 25, 2001, in an apparent effort to establish that the officer had not actually seen Jordan engaged in drug trafficking. Defense counsel asked, "My question was, officer, you charged Fred Jordan with drug trafficking on April 25th; would that be a fair statement?" To which the officer responded, "I don't believe so. It was possession. He had a warrant for trafficking."
{¶ 5} We review the trial court's decision to deny a mistrial for an abuse of discretion. State v. Chitwood (1993), 83 Ohio App.3d 442,448, 615 N.E.2d 257. An abuse of discretion is more than an error of law or a mistake in judgment; rather, it is an arbitrary, unconscionable, or unreasonable arrogation of authority. State ex rel. Duncan v. ChippewaTwp. Trustees (1995), 73 Ohio St.3d 728, 654 N.E.2d 1254. Because of the trial court's superior position to judge the tenor of defense counsel's question, we defer to the court's determination that the police officer's response was precipitated, although there may have been reason to rule otherwise, and therefore we cannot say that the decision to deny a mistrial was arbitrary, unconscionable, or unreasonable. We note, in this regard, that defense counsel, perhaps as a stratagem to preserve the issue for appeal, did not move to strike the testimony or to have the trial court issue a curative instruction, either of which would have presumably diminished the impact of the statement.
{¶ 6} In his second assignment of error, Jordan asserts that the trial court erred by failing to provide a jury instruction on the legal definition of "possession," as that term appears in R.C. 2925.11(A) and is defined in R.C. 2925.01(K). As statutorily defined, "possession" is "having control over a thing or substance," but the act of possessing cannot be "inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." According to Jordan, it was possible under the facts of his case for the jurors to have believed that an inference of his possession of the cocaine could have been made merely because it was found near where he was arrested. Although Jordan did not request an instruction on the legal definition of "possession," he asserts that the trial court's failure to give such an instruction constituted plain error.
{¶ 7} We disagree. This is not a case in which the jury was asked to infer possession "solely" from Jordan being in the same area in which the cocaine was later found. Such a case would have been presented if the police had simply walked up to him and discovered the cocaine on the ground around him. In this case, however, the police officer who had chased Jordan testified that he had seen him toss a small brown bag out of his pocket, and that the bag was later recovered in the same vicinity. Thus, there was direct evidence of possession, and the jury was not asked to infer the fact simply because Jordan occupied the same general plot of ground as the cocaine. Accordingly, it was not error, let alone plain error, for the trial court not to have given an instruction on the statutory definition of possession, since the type of possession that the jury was asked to consider was possession in the plain, ordinary sense.
{¶ 8} In his third assignment of error, Jordan asserts that the trial court erred in giving a jury instruction on flight that allowed the jury to infer guilt as Jordan's motive for running. According to Jordan, the instruction was improper because he had exercised his right not to testify, and therefore the prosecutor was allowed to argue to the jury, without any evidence to the contrary, that the reason why he had sprinted away from the police was his guilt for having cocaine on his person. While the Fifth Amendment gave Jordan the right not to testify, the Fifth Amendment did not protect him from the consequence of that decision — that the state's evidence against him went unchallenged. There was no error in the giving of the instruction, which explained at length that the inference of guilt from flight was not alone sufficient to sustain a conviction. The third assignment of error is overruled.
{¶ 9} In his fourth assignment of error, Jordan argues that the trial court erred by allowing the prosecutor to make improper closing argument by denigrating the theory of the defense as one that relied upon a "cocaine fairy" as the source of the cocaine found lying on the ground. The prosecutor's argument was in response to the suggestion by the defense that the area in which Jordan was arrested was so thoroughly infested with drug trafficking that it was not unlikely that the cocaine could have been on the ground from some earlier drug transaction gone awry. Although we do not necessarily approve of the prosecutor's remark, which may have been unnecessarily sarcastic, we do not find it so offensive as to constitute misconduct, particularly where it appears to have been intended not for the purpose of ridicule but to argue the unlikelihood of the defendant's theory.
{¶ 10} In his fifth and sixth assignments of error, Jordan argues that his convictions were based upon insufficient evidence and contrary to the weight of the evidence. Having reviewed the record, however, we hold that there was sufficient evidence on all the elements of the crimes charged, and that the jury did not lose its way or commit a manifest miscarriage of justice in returning the verdicts that it did. State v.Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.
{¶ 11} Therefore, the judgment of the trial court is affirmed.
{¶ 12} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
DOAN, P.J., HILDEBRANDT and GORMAN, JJ.